# <u>EXHIBITS</u>

**EXHIBIT 1**       Complaint – CV2015-003256

**EXHIBIT 2**       All other pleadings filed to date – CV2015-003256

# EXHIBIT 1

**NOTICE OF REMOVAL**
*City of Phoenix v First State Insurance Company; Twin City Fire Insurance Company, et al.*





MAR ∠ 2015

MICHAEL K. JEANES, CLERK
A. DRIVER
DEPUTY CLERK

1  E.J. Kotalik, Jr. (009746)
   Thomas R. Nadzieja (015214)
2  **PESHKIN & KOTALIK, P.C.**
   3030 North Central Avenue, Suite 1106
3  Phoenix, Arizona  85012
   (602) 248-7770
4  (602) 248-0777 Fax
5  Attorneys for Plaintiff City of Phoenix

6
7                **SUPERIOR COURT OF ARIZONA**

8                     **COUNTY OF MARICOPA**

9  CITY OF PHOENIX, a municipal
   corporation,                              No.: CV 2015-003256
10
                              Plaintiff,     **COMPLAINT**
11 vs.
                                             (Breach of Contract; Tortious
12 FIRST STATE INSURANCE               Breach of Implied Covenant of
   COMPANY, a foreign insurer; TWIN    Good Faith and Fair Dealing;
13 CITY FIRE INSURANCE COMPANY, a      Declaratory Judgment)
   foreign insurer, NEW ENGLAND
14 REINSURANCE CORPORATION, a          **(Jury Trial Requested)**
   foreign insurer, NUTMEG INSURANCE
15 COMPANY, a foreign insurer
16
17                           Defendants.
18

19     Plaintiff City of Phoenix ("the City"), for its complaint alleges as follows:

20     1.     The City is a municipal corporation located within Maricopa County,

21 Arizona.

22     2.     Defendant First State Insurance Company ("First State") is a foreign

23 insurer that issued certain insurance policies to the City as described herein.

24     3.     Defendant Twin City Fire Insurance Company ("Twin City") is a foreign

25 insurer that issued certain insurance policies to the City as described herein.

26     4.     Defendant New England Reinsurance Corporation ("New England Re") is

27 a foreign insurer that issued certain insurance policies to the City as described herein.

28
                                    1

5.     Defendant Nutmeg Insurance Company ("Nutmeg") is a foreign insurer that issued certain insurance policies to the City as described herein.

6.     Defendants are subsidiaries of and/or companies affiliated with The Hartford Financial Services Group, Inc. ("The Hartford").  All actions taken by The Hartford in connection with the subject matter of this action were taken on behalf of the individual defendants named herein.

7.     Upon information and belief, David M. Lahm is an employee of The Hartford.  All actions taken by Mr. Lahm were taken on behalf of The Hartford and the individual defendants named herein.

8.     The City was issued the following first-layer liability policies by companies affiliated with The Hartford:

    a.     First State Policy No. 917438 for the period July 1, 1981 to July 1, 1982;

    b.     New England Re Policy No. 781828 for the period July 1, 1982 to July 1, 1983;

    c.     New England Re Policy No. 781850 for the period July 1, 1983 to July 1, 1984; and

    d.     Twin City Policy No. TXX111381 for the period July 1, 1984 to July 1, 1985

(collectively referred to as the "First-Layer Policies").

9.     The City was issued the following umbrella liability policies by companies affiliated with The Hartford:

    a.     Twin City Policy No. TXU100506 for the period July 1, 1981 to July 1, 1982;

    b.     Twin City Policy No. TXU102780 for the period July 1, 1982 to July 1, 1983; and

    c.     Nutmeg Policy No. BXU101316 for the period July 1, 1983 to July 1, 1984

(collectively referred to as the "Umbrella Policies").

2

10.    The City is a party to a lawsuit currently pending in Maricopa County Superior Court entitled: *Tarazon v. Certainteed, et al.,* Case No. CV 2013-001762 (the "Lawsuit"). The Lawsuit alleges the City and others are legally liable for damages relating to the death of Carlos Tarazon as a result of exposure to asbestos.

11.    The City retained legal counsel to defend the Lawsuit and has paid in excess of $1 million in attorneys' fees and costs in connection with the defense of the Lawsuit through the end of 2014. The City will continue to incur such expenses until its involvement in the Lawsuit is resolved.

12.    In a letter to The Hartford dated May 2, 2014, the City's defense counsel placed The Hartford on notice of the Lawsuit and requested defense and indemnity under certain policies issued by companies affiliated with The Hartford, including the First-Layer Policies issued by First State, New England Re and Twin City.

13.    By letter to the City's defense counsel dated May 9, 2014, Mr. Lahm acknowledged notice of the Lawsuit and advised that The Hartford was conducting an investigation to determine if any of the policies apply and that all of the policies would be reviewed in order to make a coverage determination. In that letter, Mr. Lahm also advised that several of the policies contain self-insured retentions and he requested, among other things, proof of exhaustion.

14.    By email to Mr. Lahm dated May 14, 2014, the City's defense counsel provided proof that the attorneys' fees and costs incurred by the City to defend the Lawsuit through May 2014 had exhausted the City's self-insured retention.

15.    On or before June 2, 2014, Mr. Lahm advised the City's defense counsel by telephone that a settlement agreement between the City and The Hartford had voided some of the insurance policies.

16.    By email to Mr. Lahm dated June 2, 2014, the City's defense counsel requested a copy of the settlement agreement referenced by Mr. Lahm.

3

17. By email to the City's defense counsel dated June 3, 2014, Mr. Lahm provided a copy of an October 2002 settlement agreement between the City and certain companies affiliated with The Hartford.

18. On or before June 6, 2014, Mr. Lahm advised the City's defense counsel by telephone that the City must separately satisfy the $500,000 self-insured retention for each First-Layer Policy.

19. By email to Mr. Lahm dated June 6, 2014, the City's defense counsel advised that the October 2002 settlement agreement did not appear to affect coverage under the First-Layer Policies and that the self-insured retentions under all First-Layer Policies had been satisfied because the City had paid defense costs in excess of $500,000. In that email, the City's defense counsel also requested that Mr. Lahm provide legal authority if he disagreed that the self-insured retention under the First-Layer Policies had been exhausted.

20. By email to Mr. Lahm dated July 11, 2014, the City's defense counsel requested a status of the City's claim under the First-Layer Policies.

21. By letter to Mr. Lahm dated October 14, 2014, the City, through its coverage counsel, demanded that The Hartford provide a written coverage position in connection with the First-Layer Policies because Mr. Lahm had not replied to the City's position concerning exhaustion of the self-insured retention as set forth in the June 6, 2014 email from the City's defense counsel. In that letter, the City's coverage counsel also advised Mr. Lahm that coverage under the Umbrella Policies may be implicated.

22. By email to Mr. Lahm dated October 31, 2014, the City's coverage counsel requested acknowledgment that The Hartford received the October 14, 2014 letter and asked when the City could expect The Hartford's written coverage position.

23. On November 4, 2014, the City's coverage counsel called Mr. Lahm and left a voice message asking for a response to the October 14, 2014 letter.

4

24.   By letter to Mr. Lahm dated November 6, 2014, the City's coverage counsel again asked when The Hartford would provide a written coverage position in connection with the First-Layer and Umbrella Policies.  Enclosed with the letter, the City's coverage counsel also provided The Hartford with its copies of the First-Layer and Umbrella Policies, a coverage chart identifying the primary and excess insurers that had been placed on notice of the Lawsuit, the demand and notice of claim letter served on the City in connection with the claims asserted in the Lawsuit, additional proof of the City's defense costs incurred in the Lawsuit, and additional pleadings and disclosure statements in the Lawsuit.  By doing so, the City had complied with all reasonable requests for information as of that time.

25.   By letter to the City's coverage counsel dated November 6, 2014, Mr. Lahm advised that the First-Layer Policies do not provide for a duty to defend but only a right and opportunity to associate with the insured in the defense and control of any claim or proceeding arising out of an occurrence reasonably likely to involve the Company and that The Hartford was not electing to exercise its right to associate with the City in the defense of the Lawsuit.  In that letter, Mr. Lahm also stated that The Hartford would only conduct a full coverage analysis with regard to the First-Layer Policies at such time as it was provided with documentation supporting proper exhaustion of the retained limits.  Mr. Lahm also stated in that letter that the Umbrella Policies provide coverage in excess of the underlying limits of applicable insurance or self-insured retention for each respective year and that The Hartford would not conduct a full coverage analysis under the Umbrella Policies until provided with documentation substantiating proper exhaustion of the underlying limits of applicable insurance or a self-insured retention.

26.   On November 6, 2014, Mr. Lahm advised the City's coverage counsel by telephone that The Hartford would agree to defend the City at such time that the City

1  had incurred and paid $1,500,000 in defense costs which represented exhaustion of the

2  $500,000 self-insured retention under three First-Layer Policies.

3       27.    By email to the City's coverage counsel dated November 6, 2014, Mr.

4  Lahm advised that The Hartford's duty to defend under the First-Layer Policies is not

5  triggered until all of the self-insured retentions on the triggered policies had been

6  exhausted and that the retentions must be horizontally exhausted.  Mr. Lahm also

7  advised in that email that The Hartford required invoices and cancelled checks as proof

8  of exhaustion.

9       28.    By email to Mr. Lahm dated November 7, 2014, the City's coverage

10 counsel confirmed that Mr. Lahm had advised during the November 6, 2014 telephone

11 call that The Hartford would defend the City when it incurred and paid $1,500,000 in

12 defense costs which was the sum of the self-insured retention under three of the First-

13 Layer Policies.  In that email, the City's coverage counsel also requested that Mr. Lahm

14 identify the specific policy language that supported that position.  In that email, the

15 City's coverage counsel also notified Mr. Lahm of a $7,000,000 time-limited settlement

16 demand made upon the City.

17      29.    On November 14, 2014, the City's coverage counsel called Mr. Lahm and

18 left a voicemail asking for a response to the November 7, 2014 email.

19      30.    By email to Mr. Lahm dated November 14, 2014, the City's coverage

20 counsel also asked for a response to the November 7, 2014 email.

21      31.    By email to Mr. Lahm dated November 18, 2014, the City's coverage

22 counsel again asked for a response to the November 7, 2014 email.

23      32.    By email to the City's coverage counsel dated November 18, 2014, Mr.

24 Lahm stated that The Hartford was investigating the information provided by the City's

25 coverage counsel in connection with the November 6, 2014 letter.  Mr. Lahm also

26 advised in that letter that The Hartford anticipated providing a written coverage position

27

28

during the second week of December 2014. In that email, Mr. Lahm also asked for copies of the City's billing records.

33.     By email to Mr. Lahm on December 3, 2014, the City's coverage counsel advised that he anticipated providing The Hartford with the City's billing records in the near future and asked for a status of The Hartford's written coverage position.

34.     By email to Mr. Lahm on December 11, 2014, the City's coverage counsel advised that he anticipated providing The Hartford with the City's billing records by the following day and again asked for a status of The Hartford's written coverage position.

35.     By email to Mr. Lahm on December 18, 2014, the City's coverage counsel provided The Hartford with invoices and checks that documented the City had incurred and paid defense costs in excess of $1,000,000. In that email, the City's coverage counsel again asked Mr. Lahm when The Hartford would provide its written coverage position. The City had complied with all reasonable requests for information as of that time.

36.     By email to the City's coverage counsel dated December 18, 2014, Mr. Lahm advised that he would look over the billing information provided on that date and that he would contact the City's coverage counsel by Tuesday, December 23, 2014. In that email, Mr. Lahm also stated that The Hartford was taking the position that legal authority cited by the City's defense counsel in June 2014 did not appear to apply in Arizona.

37.     By email to the City's coverage counsel dated December 18, 2014, Mr. Lahm advised that he was in the process of "discussing the way forward with Phoenix's carriers."

38.     By email to Mr. Lahm dated December 29, 2014, the City's coverage counsel asked Mr. Lahm to contact him regarding The Hartford's written coverage position which had still not been provided.

7

39. On January 6, 2015, the City's coverage counsel called Mr. Lahm and left a voicemail asking for a status of The Hartford's written coverage position.

40. By email to Mr. Lahm dated January 6, 2015, the City's coverage counsel asked Mr. Lahm to contact him regarding The Hartford's written coverage position which had still not been provided.

41. On January 12, 2015, the City's coverage counsel called Mr. Lahm and left a voicemail asking him for a status of The Hartford's written coverage position.

42. By email to Mr. Lahm dated January 12, 2015, the City's coverage counsel asked Mr. Lahm to contact him regarding The Hartford's written coverage position which had still not been provided.

43. By email to the City's coverage counsel dated January 13, 2015, Mr. Lahm advised that, regardless of how many self-insured retentions applied, The Hartford required the City's billing records and that the billing records were a threshold issue that must be addressed before The Hartford would issue a coverage position.

44. By email to Mr. Lahm dated January 13, 2015, the City's coverage counsel pointed out that the City's billing records were provided to The Hartford on December 18, 2014 and that Mr. Lahm acknowledged receipt of those billing records on that date. On January 13, 2014, the City's coverage counsel also emailed Mr. Lahm duplicate copies of all billing records that were previously emailed on December 18, 2014.

45. By email and letter to Mr. Lahm dated January 16, 2015, the City's coverage counsel provided The Hartford with the City's written coverage position under the First-Layer and Umbrella Policies and demanded a prompt, comprehensive reply to the City's position.

46. By email to the City's coverage counsel dated January 23, 2015, Mr. Lahm requested a conference call involving The Hartford's in-house coverage counsel.

47.   By email to Mr. Lahm dated January 23, 2015, the City's coverage counsel asked Mr. Lahm to explain the purpose of the requested conference call and asked why The Hartford has not provided the written coverage position that had been requested for more than three months.

48.   By email to the City's coverage counsel dated January 26, 2015, Mr. Lahm explained that The Hartford had not provided a written coverage position because it was only recently provided with the City billing records and that the purpose of the requested conference call was to discuss The Hartford's position that the City would have to exhaust a $500,000 self-insured retention for each policy issued to the City over a twenty year period by spending a minimum of $10,000,000 before triggering a duty to defend under any of the First-Layer Policies.

49.   By email to Mr. Lahm dated January 26, 2015, the City's coverage counsel stated that he would participate in a conference call only after The Hartford replied to his January 16, 2015 letter explaining the precise bases for any dispute concerning the issues raised in that letter including the exact policy language supporting that position and asked when The Hartford would reply.

50.   By separate email to Mr. Lahm on January 26, 2015, the City's coverage counsel advised that a mediation had been scheduled in connection with the Lawsuit for February 18, 2015 and asked whether a representative of The Hartford would attend.

51.   By email to Mr. Lahm on February 4, 2015, the City's coverage counsel again asked for a reply to his January 16, 2015 letter and mediation notice.  In that email, the City's coverage counsel also asked why The Hartford had not provided the City with copies of the First-Layer and Umbrella Policies maintained by The Hartford which had been requested on November 6, 2015.

52.   The City has notified The Hartford about the lawsuit in compliance with the terms of the First-Layer Policies and the Umbrella Policies.  The City also has

9

1   cooperated with all reasonable requests for information sought by The Hartford in

2   connection with its investigation.

### COUNT ONE
### (Breach of Contract)

5   53.   Plaintiff reasserts all prior allegations.

6   54.   The Lawsuit alleges claims against the City that constitute bodily injury

7   liability caused by an occurrence under the terms of the First-Layer Policies.

8   55.   The First-Layer Policies each contain a supplementary payments

9   provision that provides, in relevant part: "… in no event shall the Insured's participation

10  in such legal expenses exceed the retained limit in Item 2 [or Item 2A] of the

11  Acceptance Portion of this form."

12  56.   The First-Layer Policies each contain an Acceptance provision that

13  provides, in relevant part: "… The Insured's Retained Limit shall be: Item 2 [or Item

14  2A]. $500,000. any one occurrence arising out of Bodily Injury Liability …"

15  57.   The City provided The Hartford with documentation that it had incurred

16  and paid defense costs in excess of $1,000,000 through the end of 2014.

17  58.   Defendants' duty to defend and/or pay the City's defenses costs was

18  triggered under at least one of the First-Layer Policies once the City's legal defenses in

19  connection with the Lawsuit exceeded $500,000.

20  59.   The Lawsuit alleges bodily injury covered under the Umbrella Policies.

21  60.   The Umbrella Policies each contain an Investigation, Defense, Settlement

22  provision that provides, in relevant part: "[t]he Company will defend any claim or suit

23  against the insured seeking damages on account of injury or damage to which this

24  policy applies and which no underlying insurer is obligated to defend …"

25  61.   The Hartford has communicated its position to the City that no underlying

26  First-Layer Policy is obligated to defend the City because the City has not incurred at

27  least $10,000,000 in defense costs.

28

10

62. Defendants' duty to defend and pay the City's defenses costs is triggered under at least one of the Umbrella Policies if defendants are not obligated to defend the City under any of the First-Layer Policies.

63. Defendants have an implied contractual duty of good faith and fair dealing under the First-Layer Policies and Umbrella Policies.

64. Defendants' failure to timely investigate their coverage obligations constitutes a material breach of the First-Layer Policies and Umbrella Policies and the implied duty of good faith and fair dealing.

65. Defendants' failure and refusal to defend the City in connection with the Lawsuit constitutes a material breach of the First-Layer Policies and Umbrella Policies and the implied duty of good faith and fair dealing.

66. As a direct and proximate result of the defendants' breach of the First-Layer Policies and Umbrella Policies and the duty of good faith and fair dealing, the City has incurred and will continue to incur damages in an amount to be proven at trial.

## COUNT TWO
### (Tortious Breach of Implied Covenant of Good Faith and Fair Dealing)

67. The City reasserts all prior allegations.

68. Defendants had a duty to act in good faith to the City in connection with its claim for coverage for the Lawsuit.

69. Defendants breached the duty of good faith and fair dealing owed to the City by their unreasonable and unjustifiable conduct in the handling of the City's claim for coverage in connection with the Lawsuit, including but not limited to the following:

    (a) Failure to timely, adequately and reasonably investigate the notice of the Lawsuit and their obligations under the First-Layer and Umbrella Policies;

    (b) Delaying payment of benefits due under the First-Layer and/or Umbrella Policies to which the City was entitled even though defendants knew or should have known such payments were required;

11

(c)   Failure to provide a defense to the City under the First-Layer and/or Umbrella Policies when defendants knew or should have known that defendants had a duty to defend or pay for the defense of the entirety of the Lawsuit;

(d)   Requiring the City to bear the expense for the defense of the Lawsuit which expense should have been incurred by defendants;

(e)   Failure to timely, adequately and reasonably respond to numerous inquiries and communications from the City and/or its representatives;

(f)   Refusal, without a reasonable basis in law or fact, to pay the full amount of defense costs already incurred and expected to be incurred in the future by the City in connection with the defense of the Lawsuit; and

(g)   Compelling the City to institute litigation and incur additional legal expense to force defendants to comply with their contractual and good faith obligations under the First-Layer and Umbrella Policies.

70.   As a direct result of the breach of the implied duty of good faith and fair dealing by defendants, the City has sustained damage in an amount to be proven at trial.

71.   Defendants acted to serve their own interests having reason to know and consciously disregarding a substantial risk that their conduct would significantly injure the City, therefore requiring an award of punitive damages to punish defendants and deter defendants from engaging in this conduct in the future.

## COUNT THREE
### (Declaratory Judgment)

72.   The City reasserts all prior allegations.

73.   An actual controversy exists between plaintiff and defendants as to whether there is insurance coverage available for the Lawsuit under the First-Layer Policies and Umbrella Policies.

74.   The City is a legal entity interested under written contracts, namely, the First-Layer Policies and Umbrella Policies, whose rights, status and legal relationships are affected by the Policies and is thus entitled to have determined the construction of

12

1   the Policies and to obtain a declaration of rights, status and legal obligations thereunder

2   pursuant to A.R.S. § 12-1831, et seq.

3       WHEREFORE, the City prays for judgment against defendants as follows:

4       1.   For a declaration that the First-Layer Policies and/or Umbrella Policies

5   require defendants to defend or pay for the defense of the Lawsuit in its entirety and to

6   pay for all past and future expenses incurred by the City in connection with the defense

7   of the Lawsuit.

8       2.   For a declaration that the First-Layer Policies and/or Umbrella Policies

9   require defendants to pay any judgment against the City in the Lawsuit subject to the

10   limits of the First-Layer Policies and/or Umbrella Policies;

11       3.   For contract benefits still owed the City under the First-Layer Policies and

12   Umbrella Policies including pre-judgment interest;

13       4.   For compensatory and consequential damages in an amount to be proven

14   at trial;

15       5.   For punitive damages in an amount determined by the trier of fact to be

16   appropriate and adequate to punish defendants and make an example of defendants so as

17   to deter them and others from such future misconduct;

18       6.   For reasonable attorneys' fees incurred herein pursuant to A.R.S. § 12-

19   341.01;

20       7.   For plaintiff's costs incurred herein; and

21       8.   For such other and further relief as the Court deems just and proper

22   pursuant to A.R.S. § 12-1838 or principles of equity.

23       A jury trial, if necessary, is hereby requested pursuant to A.R.S. § 12-1839 and

24   Arizona common law.

25

26

27

28

13

1    Dated this 4th day of March, 2015.

2                   PESHKIN & KOTALIK, P.C.

3

4               By:

5                  E. J. Kotalik, Jr.

6                  Thomas R. Nadzieja
                    3030 North Central Avenue

7                  Suite 1106
                    Phoenix, Arizona 85012

8                  Attorneys for plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2

**NOTICE OF REMOVAL**

*City of Phoenix v First State Insurance Company; Twin City Fire Insurance Company, et al.*

# Superior Court of Arizona
## In Maricopa County

# CV2015-003256

(Please Type or Print)

MICHAEL K. JEANES, CLERK
DEP
BY *A. Drive*
FILED

15 MAR -4 PM 1:09

Is Interpreter Needed? ☐ Yes ☒ No

If yes, what language: _____

To the best of my knowledge, all information is true and correct.

Attorney/Pro Per Signature (If no attorney, YOUR signature)

Plaintiff's Attorney: E.J. Kotalik, Jr., Peshkin & Kotalik, P.C., 3030 N. Central #1106, Phoenix, AZ 85012 (602) 248-7770
Attorney's Bar Number:     009746

Plaintiff's Name(s):  (List all)
**CITY OF PHOENIX**

Plaintiff's Address:
c/o Peshkin & Kotalik, P.C.
3030 N. Central Ave. #1106
Phoenix, AZ 85012

Defendant's Name(s):  (List all.) **FIRST STATE INSURANCE COMPANY, a foreign insurer; TWIN CITY FIRE INSURANCE COMPANY, a foreign insurer; NEW ENGLAND REINSURANCE CORPORATION, a foreign insurer; and NUTMEG INSURANCE COMPANY, a foreign insurer**

(List additional defendants on page two and/or attach a separate sheet).

EMERGENCY ORDER SOUGHT:
(if applicable)

☐ Temporary Restraining Order
☐ OSC – Order to Show Cause
☐ Employer Sanction

☐ Provisional Remedy
☐ Election Challenge
☐ Other _____

☒ RULE 8(i) COMPLEX LITIGATION DOES NOT APPLY.  (Mark appropriate box under **Nature of Action**.)

☐ RULE 8(i) COMPLEX LITIGATION APPLIES    Rule 8(i) of the Rules of Civil Procedure defines a "Complex Case" as civil actions that require continuous judicial management. A typical case involves a large number of witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties. (Mark appropriate box on page two as to complexity, **in addition** to the Nature of Action case category).

## NATURE OF ACTION
(Place an "X" next to the **one** case category that most accurately describes your primary case.)

**100 TORT MOTOR VEHICLE:**
☐ 101 Non-Death/Personal Injury
☐ 102 Property Damage
☐ 103 Wrongful Death
**110 TORT NON-MOTOR VEHICLE:**
☐ 111 Negligence
☐ 112 Product Liability – Asbestos
☐ 112 Product Liability – Tobacco
☐ 112 Product Liability – Toxic/Other
☐ 113 Intentional Tort
☐ 114 Property Damage
☐ 115 Legal Malpractice
☐ 115 Malpractice – Other professional
☐ 117 Premises Liability
☐ 118 Slander/Libel/Defamation
☐ 116 Other (Specify) _____

**120 MEDICAL MALPRACTICE:**
☐ 121 Physician M.D. ☐ 123 Hospital
☐ 122 Physician D.O ☐ 124 Other
**130 CONTRACTS:**
☐ 131 Account (Open or Stated)
☐ 132 Promissory Note
☐ 133 Foreclosure
☐ 138 Buyer-Plaintiff
☐ 139 Fraud
☒ 134 Other Contract (i.e. Breach of Contract)
☐ 135 Excess Proceeds - Sale
☐ Construction Defects (Residential/Commercial)
  ☐ 136 Six to Nineteen Structures
  ☐ 137 Twenty or More Structures

©Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

CV10f  090213

Case No. _____

**150-199 OTHER CIVIL CASE TYPES:**
- ☐ 156 Eminent Domain/Condemnation
- ☐ 151 Eviction Actions (Forcible and Special Detainers)
- ☐ 152 Change of Name
- ☐ 153 Transcript of Judgment
- ☐ 154 Foreign Judgment
- ☐ 158 Quiet Title
- ☐ 160 Forfeiture
- ☐ 175 Election Challenge
- ☐ 179 Employer Sanction Action (A.R.S. §23-212)
- ☐ 180 Injunction against Workplace Harassment
- ☐ 181 Injunction against Harassment
- ☐ 182 Civil Penalty
- ☐ 186 Water Rights (**Not General Stream  Adjudication**)
- ☐ 187 Real Property
- ☐ Sexually Violent Persons (A.R.S. §36-3704)
      (Except Maricopa County)
- ☐ Minor Abortion (See Juvenile in Maricopa County)
- ☐ Special Action Against Lower Courts
      (See lower court appeal cover sheet in Maricopa)
- ☐ 194-Immigration Enforcement Challenge
      (§§1-501, 1-502, 11-1051)

**150-199 UNCLASSIFIED CIVIL CASE TYPES:**
- ☐ Notice of Appeal pursuant to A.R.S. § 12-904
      (formerly "Administrative Review")
      (Use lower court appeal cover sheet in Maricopa)
- ☐ 150 Tax Appeal
(All other tax matters must be filed in the AZ Tax Court)

- ☐ 155 Declaratory Judgment
- ☐ 157 Habeas Corpus
- ☐ 184 Landlord Tenant Dispute - Other
- ☐ 159 Restoration of Civil Rights (Federal)
- ☐ 159 Clearance of Records (A.R.S. §13-4051)
- ☐ 190 Declaration of Factual Innocence (A.R.S.§12-771)
- ☐ 191 Declaration of Factual Improper Party Status
- ☐ 193 Vulnerable Adult (A.R.S. §46-451)
- ☐ 165 Tribal Judgment
- ☐ 167 Structured Settlement (A.R.S. §12-2901)
- ☐ 169 Attorney Conservatorships (State Bar)
- ☐ 170 Unauthorized Practice of Law (State Bar)
- ☐ 171 Out-of-State Deposition for Foreign Jurisdiction
- ☐ 172 Secure Attendance of Prisoner
- ☐ 173 Assurance of Discontinuance
- ☐ 174 In-State Deposition for Foreign Jurisdiction
- ☐ 176 Eminent Domain–Light Rail Only
- ☐ 177 Interpleader– Automobile Only
- ☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
- ☐ 183 Employment Dispute - Discrimination
- ☐ 185 Employment Dispute - Other
- ☐ 195(a) Amendment of Marriage License
- ☐ 195(b) Amendment of Birth Certificate
- ☐ 163 Other

_____
(Specify)

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

- ☐ Antitrust/Trade Regulation
- ☐ Construction Defect with many parties or structures
- ☐ Mass Tort
- ☐ Securities Litigation with many parties
- ☐ Environmental Toxic Tort with many parties
- ☐ Class Action Claims
- ☐ Insurance Coverage Claims arising from the above-listed case types
- ☐ A Complex Case as defined by Rule 8(i) ARCP

Additional Plaintiff(s)
_____

_____

Additional Defendant(s)
_____

_____

1    E.J. Kotalik, Jr. (009746)
     Thomas R. Nadzieja (015214)
2    **PESHKIN & KOTALIK, P.C.**
3    3030 North Central Avenue
     Suite 1106
4    Phoenix, Arizona  85012
     (602) 248-7770
5    (602) 248-0777 Fax
6    Attorneys for Plaintiff City of Phoenix

MICHAEL K. JEANES. CLERK
BY
*A. Driver*
DEP
FILED

15 MAR -4 PH 1: 11

7

8                    **SUPERIOR COURT OF ARIZONA**

9                      **COUNTY OF MARICOPA**

10   CITY OF PHOENIX, a municipal
11   corporation,                          No.:    CV 2015-003256

12                        Plaintiff,       **CERTIFICATE REGARDING**
                                           **COMPULSORY ARBITRATION**
13   vs.

14   FIRST STATE INSURANCE
     COMPANY, a foreign insurer; TWIN
15   CITY FIRE INSURANCE COMPANY, a
16   foreign insurer, NEW ENGLAND
     REINSURANCE CORPORATION, a
17   foreign insurer, NUTMEG INSURANCE
     COMPANY, a foreign insurer
18

19                        Defendants.

20

21        Plaintiff certifies that this matter is not subject to compulsory arbitration because

22   plaintiff seeks non-monetary relief in its complaint and because the largest award sought

23   by the complaint, including punitive damages, but excluding interest, attorneys' fees

24   and costs, exceeds the limit set by Local Rule for compulsory arbitration.

25

26

27

28

                                         1

1

Dated this 4th day of March, 2015.

2

PESHKIN & KOTALIK, P.C.

3

4

By:

5

E. J. Kotalik, Jr.

6

Thomas R. Nadzieja
3030 North Central Avenue

7

Suite 1106
Phoenix, Arizona 85012

8

Attorneys for plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MICHAEL K. JEANES, CLERK
RECEIVED CCC #1
NIGHT DEPOSITORY,

15 MAR -5 AM 9 22

FILED BY A. DRIVER

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| City of Phoenix, a municipal corporation<br>vs.<br>First State Insurance Company, a foreign unsurer; Twin City Fire Insurance Company, a foreign insurer, New England Reinsurance Corporation, a foreign insurer, Nutmeg Insurance Company, a foreign insurer | **CASE NO.** CV2015-003256<br><br>**AFFIDAVIT OF SERVICE OF PROCESS** |

I, THE Affiant, certify under penalty of perjury that I am fully qualified to serve process in this case, having been so appointed by the Court that I have received and served the following documents in the manner set forth below.

On March 4th, 2015 I received from Peshkin & Kotalik a Summons; Complaint; Certificate Regarding Compulsory Arbitration and Request for Production of Documents to be served upon the Twin City Fire Insurance Company c/o the Arizona Department of Insurance at 2910 N. 44th St. 2nd floor Phoenix, AZ 85018.

On March 4th, 2015 at 2:54 pm, I personally hand-delivered said documents to Amanda Buettner (Administrative Assistant III) a person authorized to accept service at the Arizona Department of Insurance at 2910 N. 44th St. 2nd floor Phoenix, AZ 85018 .

I certify under penalty of perjury that the foregoing is true and correct.

Dated this  4  day of  _March_ , 2015

Affiant: John Root, Central Courier
Certified: Maricopa County

MICHAEL K. JEANES, CLERK
RECEIVED CCC #1
NIGHT DEPOSITORY

15 MAR -5 AM 9: 22

FILED BY A. DRIVER

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| City of Phoenix, a municipal corporation<br>vs.<br>First State Insurance Company, a foreign unsurer; Twin City Fire Insurance Company, a foreign insurer, New England Reinsurance Corporation, a foreign insurer, Nutmeg Insurance Company, a foreign insurer | **CASE NO.** CV2015-003256<br><br>**AFFIDAVIT OF SERVICE OF PROCESS** |

I, THE Affiant, certify under penalty of perjury that I am fully qualified to serve process in this case, having been so appointed by the Court that I have received and served the following documents in the manner set forth below.

On March 4th, 2015 I received from Peshkin & Kotalik a Summons; Complaint; Certificate Regarding Compulsory Arbitration and Request for Production of Documents to be served upon the Nutmeg Insurance Company c/o the Arizona Department of Insurance at 2910 N. 44th St. 2nd floor Phoenix, AZ 85018.

On March 4th, 2015 at 2:54 pm, I personally hand-delivered said documents to Amanda Buettner (Administrative Assistant III) a person authorized to accept service at the Arizona Department of Insurance at 2910 N. 44th St. 2nd floor Phoenix, AZ 85018 .

I certify under penalty of perjury that the foregoing is true and correct.

Dated this 4 day of _March_, 2015

Affiant: John Root, Central Courier
Certified: Maricopa County

MICHAEL K. JEANES, CLERK
RECEIVED CCC #1
NIGHT DEPOSITORY

**15 MAR -5 AM 9: 23**

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF MARICOPA

FILED BY A. DRIVER

| | |
|---|---|
| City of Phoenix, a municipal corporation<br>vs.<br>First State Insurance Company, a foreign unsurer; Twin City Fire Insurance Company, a foreign insurer, New England Reinsurance Corporation, a foreign insurer, Nutmeg Insurance Company, a foreign insurer | **CASE NO. CV2015-003256**<br><br>**AFFIDAVIT OF SERVICE OF PROCESS** |

I, THE Affiant, certify under penalty of perjury that I am fully qualified to serve process in this case, having been so appointed by the Court that I have received and served the following documents in the manner set forth below.

On March 4th, 2015 I received from Peshkin & Kotalik a Summons; Complaint; Certificate Regarding Compulsory Arbitration and Request for Production of Documents to be served upon the New England Reinsurance Corporation c/o the Arizona Department of Insurance at 2910 N. 44th St. 2nd floor Phoenix, AZ 85018.

On March 4th, 2015 at 2:54 pm, I personally hand-delivered said documents to Amanda Buettner (Administrative Assistant III) a person authorized to accept service at the Arizona Department of Insurance at 2910 N. 44th St. 2nd floor Phoenix, AZ 85018 .

I certify under penalty of perjury that the foregoing is true and correct.

Dated this _4_ day of _March_ , 2015

Affiant: John Root, Central Courier
Certified: Maricopa County